# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1790

_____

| | | |
|---|---|---|
| United Healthcare Insurance Co.; | * | |
| AARP, | * | |
| | * | |
| Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| | * | |
| AdvancePCS, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 7, 2002

Filed:  November 1, 2002

_____

Before HANSEN, Chief Judge, HEANEY and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This case involves the propriety of a preliminary injunction granted without an evidentiary hearing.  United Healthcare Insurance Co. (United) and the American Association of Retired Persons (AARP) filed an action against AdvancePCS, alleging violations of the Minnesota Deceptive Trade Practices Act (MDTPA) and other

common law claims. Based on affidavits alone, the district court[1] preliminarily enjoined AdvancePCS from processing certain drug discount claims under its competing program. Because undisputed evidence existed in the affidavits to support the preliminary injunction, we affirm.

## I.

"Whether a preliminary injunction should issue involves consideration of ... the threat of irreparable harm to the movant[,] the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant[,] the probability that movant will succeed on the merits[,] and ... the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). We will affirm a grant of injunctive relief unless the district court " 'clearly erred in its characterization of the facts, made a mistake of law, or abused its discretion in considering the equities.' " *See Shen v. Leo A. Daly Co.*, 222 F.3d 472, 477 (8th Cir. 2000) (quoting *Bhd. of Maint. of Way Employees, Lodge 16 v. Burlington N. R.R. Co.*, 802 F.2d 1016, 1020 (8th Cir. 1986)).

AdvancePCS challenges only the district court's finding of a threat of irreparable harm and the district court's conclusion that AARP and United were likely to succeed on their MDTPA claims. We first consider the threat of irreparable harm, which must exist for a preliminary injunction to issue. *Dataphase*, 640 F.2d at 114 n.9. The district court found a threat of irreparable harm in AARP and United's potential loss of reputation and goodwill. We review this determination for clear error. *See Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 489 (8th Cir. 1993).

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

For four years, AdvancePCS helped administer a drug discount program for AARP (AARP Program). AdvancePCS served as a pharmacy benefit management company (PBM), negotiating volume discounts with pharmacies and rebates with drug companies that AARP members would receive in exchange for an annual fee. As part of this arrangement, AdvancePCS maintained a prescription history for each AARP Program participant and would check for adverse drug interactions as part of a Drug Utilization Review (DUR) each time that it processed a drug discount claim.

Under the AARP Program, AdvancePCS issued drug discount cards to AARP Program participants that contained each participant's AARP Program code number. This code number consisted of AARP's "carrier number," a "group number," and an individual "identification number." These cards also bore the AARP logo, the participant's name, and AdvancePCS's "bank information number," indicating to pharmacists that the individual participated in the AARP Program and that AdvancePCS was the relevant PBM. Although these were AARP Program code numbers, AdvancePCS owned the code numbers.

Often, upon an AARP Program participant's first visit, pharmacists would create a patient profile on their computers to be used for future reference. As part of each individual's profile, the pharmacist would enter the individual's AARP Program code number and AdvancePCS's bank information number. Once a patient profile existed, pharmacies would submit the AARP Program participant's request for a drug discount electronically through an electronic data transfer system. In particular, the pharmacies' computers would automatically send AARP Program participants' drug discount claims to AdvancePCS for processing, because AdvancePCS's bank information number was stored in the AARP Program participant's profile. After checking the submitted code number to ensure that the person was part of the AARP Program, AdvancePCS would perform a DUR and inform the pharmacy of the discount amount.

In April 2001, United began to manage AARP's pharmacy services. United decided to terminate AdvancePCS, choosing Express Scripts Inc. (Express) as AARP's PBM starting in September 2001. Instead of purchasing AARP Program participants' code numbers from AdvancePCS, United and Express sent AARP Program participants new cards and code numbers to be used on and after September 1, 2001.

United and Express assumed that AdvancePCS would quit processing claims involving code numbers that were assigned to AARP Program participants prior to September 1. AdvancePCS, however, decided to launch its own drug discount program, which is called the AdvancePCS prescription plan. Under this plan, AdvancePCS would process any drug discount claim directed to it by a participating pharmacy, including claims submitted electronically via stored patient profiles. If the patient profile contained an AARP Program participant's pre-September 1 code number, AdvancePCS would treat this electronic submission as a request to use its plan and would process the claim itself without notifying the AARP Program participant that it processed the claim instead of AARP. Consequently, AdvancePCS would perform a DUR and determine the relevant drug discount for the AARP Program participant, even though AdvancePCS was no longer associated with the AARP Program. In these instances, pharmacists continued to send these claims to AdvancePCS because AdvancePCS's bank information number was still stored in the individual's patient profile.

As AdvancePCS began processing claims containing these old AARP Program code numbers, a potential divergence developed in AARP members' prescription histories, as each PBM (Express and AdvancePCS) learned only of prescriptions pertaining to drug discount claims that it had processed. DURs thus became potentially inaccurate as neither PBM necessarily possessed a full prescription history of the customer. The district court found that an adverse drug reaction resulting from an incomplete DUR might irreparably harm AARP's reputation and goodwill among

-4-

its members.  In particular, it noted that AARP Program participants had no reason to know that AdvancePCS had processed the claim and could reasonably be expected to attribute shortcomings in their prescription history to AARP, which specifically promotes DUR protection.  The district court emphasized that a significant number of AARP Program participants benefitted from DURs.  In September and October 2001 alone, Express sent DUR alerts regarding potential problems for 227,975 claims submitted to it under the AARP Program, resulting in 36,751 occasions on which pharmacists did not fill the relevant prescription.  If anything, these numbers understate the value of DUR services, since the AARP Program's weekly claim volume immediately decreased by forty percent once AdvancePCS began processing claims under the AdvancePCS prescription plan.  Accordingly, the district court enjoined AdvancePCS from processing claims that used AARP's carrier number.

Loss of intangible assets such as reputation and goodwill can constitute irreparable injury. *See General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987).  AdvancePCS, however, argues that potential DUR inaccuracy is out of the case because it has now operated its program for more than six months, and six months of prescription history enables it to offer a complete DUR.  Thus, AdvancePCS contends that the threat of irreparable injury has "evaporated."

We agree that the irreparable injury inquiry must concentrate on current threats, not past ones, but we disagree that the threat of irreparable injury has evaporated here. AdvancePCS's contention is premised on the belief that AARP Program participants will use the same pharmacy each time.  This premise is inaccurate, as undisputed evidence suggests that the average AARP Program participant uses more than one pharmacy and has three prescriptions filled per visit.  Whereas some of the 47,000 pharmacies participating in the AARP Program have chosen also to participate in the AdvancePCS Plan, many have not.  For instance, CVS, the largest pharmacy chain participating in the AARP Program (operating over 4,000 pharmacies and dispensing

approximately 12 percent of all prescriptions in the United States), and four other major pharmacy chains have chosen to forego the AdvancePCS Plan. This creates a sufficiently high probability that AARP Program participants will use both pharmacies that process their claims through Express and those that process their claims through AdvancePCS (via patient profile information), thus producing an incomplete DUR, since both Express and AdvancePCS will have divergent prescription information. Given that AARP Program participants may never learn that they had used the AdvancePCS Plan, it is reasonable to think that they would attribute shortcomings in their prescription history to AARP.

AdvancePCS also contends that AARP's potential reputational loss is not irreparable, because AARP failed to mitigate its alleged damages and to "protect" AARP members by accepting AdvancePCS's offer to share its patient history information with AARP. We disagree. For DURs to be complete, prescription data must be shared on a real-time basis. Despite AdvancePCS's offer to share information, AdvancePCS presents no evidence that the requisite technology for real-time sharing exists. AdvancePCS's offer, therefore, decreased the threat of irreparable harm but by no means eliminated it altogether.

Last, AdvancePCS argues that the potential reputational harm is too speculative, because there is no evidence that an AARP Program participant has complained because of an adverse drug reaction resulting from an incomplete DUR. Like the district court, we do not find the lack of complaints to be dispositive of the issue, as it might take months for a loss of goodwill to become manifest. Indeed, AARP Program participants have no reason to know that their prescription histories may be inaccurate given AdvancePCS's secretive manner of processing claims. The district court did not clearly err in finding a threat of irreparable harm in AARP's potential loss of reputation and goodwill among its customers.

The district court also found a threat of irreparable harm in United's potential loss of reputation and goodwill among pharmacists, as AdvancePCS's diversion of claims threatens to frustrate United's business advantage arising out of its exclusive relationship with AARP. In light of our conclusion above, however, we need not reach this issue, as the first *Dataphase* consideration is already satisfied.

We next consider appellees' likelihood of success on the merits. The district court found AARP and United likely to succeed on several of their MDTPA claims. The MDTPA provides that:

> A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:
>
> (1)  passes off goods or services as those of another;
> (2)  causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> (3)  causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
>      ...
> (5)  represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
>      ...
> (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. § 325.D44, subd. 1. The district court found likely violations of subparts (1), (2), (3), and (13), but not (5). We address only subpart (1), the "passing off" claim, since AARP and United's likely success on this claim obviates the need for any further inquiry.

The district court noted correctly that neither the statute itself nor Minnesota courts have precisely defined what constitutes "passing off" under the MDTPA. Looking to other jurisdictions, the district court ultimately construed "passing off" as "[a]ny conduct, the nature and probable tendency and effect of which is to deceive the public so as to 'pass off' the goods or business of one person as and for the goods or business of another." (quoting *Morton B. Katz & Assocs. v. Arnold*, 333 S.E.2d 115, 116, 175 Ga. App. 278, 279 (1985)). Under this definition, the district court concluded that United and AARP were likely to succeed on their "passing off" claim, as AdvancePCS's conduct had the probable tendency and effect of deceiving AARP Program participants into believing that the discount they received on their prescriptions and the DURs were obtained through the AARP Program.

Prior to the MDTPA's enactment, the Supreme Court of Minnesota described "passing off" as conduct that "deceives, or is likely to deceive, a customer exercising ordinary care in the making of a purchase of the particular goods, and induces him to purchase defendant's goods in the belief that they are those of plaintiff." *Winston & Newell Co. v. Piggly Wiggly Northwest*, 22 N.W.2d 11, 16, 221 Minn. 287, 293 (1946). *See generally Developments in the Law: Passing Off*, 77 Harv. L. Rev. 908, 910 (1964) (describing the "tort of passing off by product simulation"). The MDTPA, enacted in 1973, evidently endorsed this definition of "passing off," since it explicitly states that proof of an "intent to deceive is not required." Minn. Stat. § 325D.45, subd. 1; *cf. Ellis v. Great-West Life Assurance Co.*, 43 F.3d 382, 387 (8th Cir. 1994). We also agree with the district court that AdvancePCS's conduct, processing AARP Program participants' claims using code numbers issued to them before September 1 without obtaining their consent, is likely to deceive AARP Program participants into believing that they received AARP services.

AdvancePCS contends otherwise, arguing that AARP and United caused the confusion through their dilatory handling of their "re-engineering" of the AARP Program (for instance, by refusing to compensate pharmacists for switching over

AARP members' code numbers in their stored patient profiles) and that AdvancePCS never misleadingly asserted that it had a continuing relationship with AARP after September 1. Both contentions fail to appreciate how proof of a "passing off" claim differs from the proof required under other subparts of the MDTPA. Neither proof that AdvancePCS caused the confusion nor affirmative misrepresentations are required to prove "passing off" under the MDTPA.

Unlike subparts (2) and (3), which explicitly require that one's conduct "causes [a] likelihood of confusion," subpart (1), "passing off," does not require proof of causation. At common law, a plaintiff need only establish "both a likelihood of confusion and direct competition in order to demonstrate a likelihood of success under the [passing] off theory." *Worthington Foods, Inc. v. Kellogg Co.* 732 F. Supp. 1417, 1432 (S.D. Ohio 1990); *cf. Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 793 (9th Cir. 1981). Assuming *arguendo* that United and AARP created the opportunity for customer confusion through their post-termination conduct, AdvancePCS is still liable for failing to take reasonable precautions to prevent customer confusion with the pre-existing product. *Cf. Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 122 (1938); *Shredded Wheat Co. v. Humphrey Cornell Co.*, 250 F. 960, 966-67 (2d Cir. 1918) (L. Hand, J.). Even if AdvancePCS did not solely cause the customer confusion, it still created the likelihood of confusion here by silently processing AARP Program participants' claims without obtaining explicit consent first.

AdvancePCS argues that the district court clearly erred in finding a likelihood of customer confusion given the absence of any affidavits from customers stating they were confused. This argument is doubly flawed. First, proof of actual confusion is not required. *See* Minn. Stat. § 325D.44, subd. 2. Second, the absence of affidavits alleging customer confusion is not dispositive when customers never had reason to know that AdvancePCS had processed any of their past claims. *Cf. Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1249 (8th Cir. 1990). Given the

surreptitious manner in which AdvancePCS processed AARP Program participants' claims and the undisputed evidence indicating pharmacist confusion, we hold that the district court did not clearly err in finding that customers were likely to be confused.

Nor does appellees' case fail for the lack of affirmative misrepresentations on AdvancePCS's part. At common law, courts explicitly differentiated "false designation of origin" cases involving false advertising from those involving "passing off." *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 778 (1992) (Stevens, J., concurring in the judgment). Over time, courts interpreted " 'false description or representation' language [in trademark statutes] to mean more than mere 'palming off.' " *Id.* at 779 (citing *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.*, 214 F.2d 649 (3d Cir. 1954)). Similarly, the MDTPA codified misrepresentation as to sponsorship or affiliation in subpart (5). Minn. Stat. § 325D.44, subd. 1(5). We find it sufficient that AdvancePCS processed AARP Program participants' claims through code numbers issued before September 1 and stored in patient profiles, without notifying AARP members of its involvement.

We acknowledge that AdvancePCS owned the code numbers. The MDTPA's requirements, however, override proprietary interests. Although we recognize that United and AARP bear a heavier burden than usual because the preliminary injunction gives them substantially all the relief they would obtain after a trial on the merits, *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 790 (8th Cir. 1989), we believe that they have met their heavier burden here. The district court did not abuse its discretion in granting the preliminary injunction.

## II.

Next, we consider the district court's decision to forego an evidentiary hearing before granting the preliminary injunction. We review this decision for an abuse of discretion. *Bradshaw v. United States*, 153 F.3d 704, 708 (8th Cir. 1998).

AdvancePCS contends that the district court abused its discretion by failing to hold an evidentiary hearing, because the parties disputed what constituted "industry practice" after PBM termination and who caused the confusion. We disagree. An evidentiary hearing is required prior to issuing a preliminary injunction only when a material factual controversy exists. *See Movie Sys., Inc. v. MAD Minneapolis Audio Distribs.*, 717 F.2d 427, 432 (8th Cir. 1983). Neither of the allegedly disputed issues are relevant to the "passing off" claim. As AdvancePCS admits, industry practice pertaining to PBM termination addresses only pharmacist's expectations of who should notify them of the terminated relationship. "Passing off," on the other hand, focuses on the customer's perspective. Relatedly, AdvancePCS disputes who caused the confusion. As discussed above, however, "passing off" has no such causation requirement.

AdvancePCS contends that it is unknown how many individuals voluntarily used its program and how many did not. This fact, however, is irrelevant, since it concerns only the extent of "passing off" that occurred and not its existence. The district court did not abuse its discretion by failing to hold an evidentiary hearing.

### III.

We consider finally the amount of the bond that the district court set to secure "payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). We review the amount of the bond for an abuse of discretion. *Rathmann Group*, 889 F.2d at 789.

United and AARP had asked the district court to set the bond amount at $100,000. AdvancePCS, on the other hand, argued that the bond should be set at $54 million because United sought that amount of damages in its unjust enrichment claims. The district court ordered a $1 million bond, stating that $100,000 was insufficient given the sheer volume of claims at issue but that $54 million was too much given the lack of evidence suggesting that AARP Program participants knowingly used the AdvancePCS Plan, thus making significant damages unlikely.

-11-

AdvancePCS contends that the district court abused its discretion by not equating the bond amount with the alleged amount of unjust enrichment claim, as $54 million represents United's own estimation of how much AdvancePCS would be enriched through its Plan. We disagree. A district court can properly "fix the amount of the bond" when "the risk of harm is remote." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 n.3 (4th Cir. 1999). Given the minimal amount of evidence indicating conscious use of the AdvancePCS Plan, a $1 million bond was clearly within the district court's discretion.

## IV.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-12-