# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1694

_____

| | | |
|---|---|---|
| Heartland Academy Community Church, a Missouri not-for-profit corporation; CNS International Ministries, Inc., a Missouri not-for-profit corporation; Tracy Leftwich; David Christensen; Becky Christensen; Paula McKinney; Del McKinney; Jennifer Armstead; Peggy White; Sam Perumalla; Sheela Perumalla; Jim Brownfield; Cheryl Crary; Jim Crary; David Lawson; Marilyn Lawson; Susan McCloy; John McCloy; Denver Barry Selser; Ross Dale; Tina Dale; Shawn Jarnigan; Amy Jarnigan; Brad Hampton; Martha Hampton, | * * * * * * * * * * * * * * * * * | Appeals from the United States District Court for the Eastern District of Missouri. |
| Plaintiffs - Appellees, | * * | |
| v. | * * | |
| Michael Waddle, in his individual and official capacities, | * * * | |
| Defendant - Appellant, | * * | |
| David Parrish, in his individual and official capacities; Patricia McAfee, in her individual and official capacities; Lewis County, Missouri, | * * * * * | |
| Defendants. | * | |

_____

No. 02-2176

_____

| | |
|---|---|
| Heartland Academy Community Church, a Missouri not-for-profit corporation; CNS International Ministries, Inc., a Missouri not-for-profit corporation; Tracy Leftwich; David Christensen; Becky Christensen; Paula McKinney; Del McKinney; Jennifer Armstead; Peggy White; Sam Perumalla; Sheela Perumalla; Jim Brownfield; Cheryl Crary; Jim Crary; David Lawson; Marilyn Lawson; Susan McCloy; John McCloy; Denver Barry Selser; Ross Dale; Tina Dale; Shawn Jarnigan; Amy Jarnigan; Brad Hampton; Martha Hampton, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |
| Plaintiffs - Appellants, | * |
| | * |
| v. | * |
| | * |
| Michael Waddle, in his individual and official capacities; David Parrish, in his individual and official capacities; Patricia McAfee, in her individual and official capacities; Lewis County, Missouri, | * <br> * <br> * <br> * <br> * <br> * |
| | * |
| Defendants - Appellees. | * |

_____

Submitted:  March 13, 2003

Filed:  July 2, 2003
_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.
_____

BOWMAN, Circuit Judge.

Michael Waddle appeals from the order of the District Court[1] granting a preliminary injunction sought by CNS International Ministries, Inc.; its affiliate Heartland Academy Community Church; and named individual plaintiffs (collectively, Heartland).  Heartland cross appeals, challenging the scope of the injunction.  We affirm.

CNS owns and operates the Heartland Christian Academy (HCA) in Shelby County, Missouri, a Christian educational facility that provides services to children with behavioral and substance abuse problems.  The school is a part of a complex that spans Lewis, Knox, and Shelby counties and includes dormitories, group homes, residences, a spiritual retreat, a steakhouse, and a dairy operation.  Some students live in housing on the property, whereas others commute to attend the school.  The individual plaintiffs are parents whose children were involved in the incident that led to the preliminary injunction.  Waddle is the Chief Juvenile Officer for the Second Judicial Circuit in Missouri, which includes Lewis, Knox, and Adair counties.

On July 2, 2001, the Heartland Academy Community Church and CNS, both non-profit corporations, filed suit against Waddle; Lewis County, Missouri; and

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

David Parrish and Patricia McAfee, sheriff and deputy sheriff, respectively, for Lewis County at the times relevant to this appeal, alleging that these defendants were harassing and intimidating Heartland, its employees, and its students and their families.[2] The suit claimed constitutional violations as a result of the defendants' actions and sought legal damages and declaratory and injunctive relief. The case was pending when, on October 30, 2001, based upon continuing allegations of child mistreatment and abuse at Heartland facilities, juvenile authorities and uniformed, armed law enforcement officers removed from HCA 115 children, virtually all of the boarding students who attended the school, loading them onto school busses and taking them into protective custody. The removal was without notice to Heartland, the students, or their parents. Authorities had ex parte probable-cause state-court orders to remove only about seventy-five of the students who were taken into custody, as well as orders for approximately forty children who no longer lived at Heartland and for four others who were over the age of eighteen, that is, adults over whom juvenile authorities had no jurisdiction. Waddle had sought the orders using a list of boarding students that he had obtained in July 2001, which evidently was inaccurate by October when he decided that all of the children living at Heartland needed to be removed immediately.

The removal took over two hours, with Waddle himself noting, "The juveniles showed their emotion about leaving Heartland school in these circumstances by weeping, hugging teachers, praying, silence, singing songs, seeming non-plussed or shouting at juvenile office staff." Br. of Appellant at 16. The students were confined by juvenile authorities, up to several days, until their parents came for them. When parents retrieved their children, they were given a copy of a letter from a juvenile

---

[2]The Heartland parents were added as plaintiffs on February 14, 2002, in response to a motion filed by Heartland on November 6, 2001.

Parrish, McAfee, and Lewis County were not included in Waddle's notice of appeal, and their cross appeal, No. 02-2175, was dismissed as untimely by order of this Court on September 9, 2002. Accordingly, they are not parties to this appeal.

officer, which advised them against returning their children to Heartland, suggesting that doing so might result in a loss of custody or a referral to law enforcement authorities.

Post-removal juvenile detention hearings were scheduled for Friday, November 2, 2001, but Waddle sought dismissal of the cases for those children whose parents had picked them up by that date and a brief continuance until Monday for those whose parents had not yet come for them. All cases eventually were dismissed.

On Monday, November 5, 2001, Heartland filed with the District Court a motion for a temporary restraining order (TRO) and a preliminary injunction. By that time, many parents of the removed students had returned their children to Heartland. The motion sought, among other things, to immediately enjoin the defendants from further student removals without certain safeguards, including notice and a hearing. The court held a hearing on November 5, and the TRO was entered on November 6. On November 14–16, 2001, the District Court held a more extensive hearing on Heartland's request for a preliminary injunction. After the hearing, the court modified the TRO and on February 7, 2002, issued a final preliminary injunction order:

> Until a full trial on the merits is held in the above-styled action, Defendants Michael Waddle, David Parrish, and Patricia McAfee, their officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them who receive actual notice of this Order are enjoined from seeking or participating in any pre-hearing removal of all boarding children from HCA unless all boarding children at HCA are directly involved in the underlying facts that serve as the basis for such removal.

Memorandum & Order at 89 (Feb. 7, 2002).

On appeal from this order, Waddle first maintains that the District Court should have abstained from exercising jurisdiction over Heartland's claim for preliminary

injunctive relief. He argues that the federal court is being asked to interfere with his responsibility to enforce the State's child protection laws, and the District Court therefore should have abstained from hearing Heartland's claims.

Where a lower federal court's jurisdiction is properly invoked, its decision on abstention is reviewed for abuse of discretion. See Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 236 (1984). But as we understand Waddle's abstention argument, it is actually a challenge to federal court jurisdiction under the Rooker-Feldman doctrine,[3] so we will review de novo the District Court's decision to hear the case.[4] See Niere v. St. Louis County, Mo., 305 F.3d 834, 836 (8th Cir. 2002).

Under the Rooker-Feldman doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994). In other words, original federal jurisdiction over state-court judgments is reserved to the Supreme Court.[5] Verizon Md. Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 644 n.3 (2002). There will be no jurisdiction in the lower federal courts if the constitutional claims raised in a federal case are "inextricably intertwined" with a state-court decision. D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983).

---

[3]See D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923).

[4]To the extent Waddle is arguing that the District Court should have abstained on some other grounds, we see no abuse of discretion.

[5]An exception is a petition for habeas corpus under 28 U.S.C. § 2254 filed by a person who claims to be in state custody in violation of federal law.

But Heartland's motion for injunctive relief does not interfere with a state-court judgment—there is no state-court order permitting juvenile authorities in the future to round up all Heartland boarding students, without a hearing, and take them into protective custody. And so, in hearing Heartland's motion for a preliminary injunction, the District Court did not need to take on any issue actually litigated in the state courts or any claim "inextricably intertwined" with such an issue. The injunction here is forward-looking, directed to any contemplated wholesale pre-hearing removal of boarding students from the Heartland complex. The District Court properly asserted jurisdiction over the motion for preliminary injunctive relief.

Waddle also contends that the District Court erred in concluding that Heartland and the parents had standing to seek this injunction. We review de novo. <u>Burton v. Cent. Interstate Low-Level Radioactive Waste Compact Comm'n</u>, 23 F.3d 208, 209 (8th Cir.), <u>cert. denied</u>, 513 U.S. 951 (1994). But we "accept as true all material allegations of the complaint, and . . . construe the complaint in favor of" Heartland. <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975).

A party will have standing to assert a claim in federal court if it alleges that (1) it suffered injury in fact, (2) there is a causal connection between the injury and the challenged action, and (3) the remedy it seeks will likely redress its injury. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61 (1992). Waddle says that Heartland and the parents do not have standing to claim that the students' Fourth and Fourteenth Amendment rights have been violated and that they do not have associational standing either. We do not decide those particular questions, as it is not necessary for us to do so. On the face of the complaint, the corporate plaintiffs alleged injury to themselves (the imminent shutdown of HCA) as a result of Waddle's conduct. Further, the complaint avers that the injunctive relief Heartland seeks will prevent the harm it identifies. We hold that Heartland has standing to bring its claim for a preliminary injunction.

We turn now to Waddle's appeal from the injunction itself and our consideration of what are known in this Circuit as the four Dataphase factors. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). We review the District Court's material factual findings for clear error, its legal conclusions de novo, and the court's equitable judgment—the ultimate decision to grant the injunction—for an abuse of discretion. United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 739 (8th Cir. 2002).

The first Dataphase factor is "the threat of irreparable harm" to Heartland. 640 F.2d at 113. The District Court found that another mass removal of boarding students from Heartland, which the court thought to be a real possibility absent an injunction, would result in additional trauma to already troubled children, a loss of trust, and a break in the continuity of care that is so important to the Heartland children. Further, the court noted the frustrations of parents and staff as a result of the previous removal and the threat to HCA and its mission. These findings of potential harm are not clearly erroneous. Further, the court did not err in concluding that these harms, if they came to pass, were irreparable, that is, they would be avoided only by granting injunctive relief and could not be reversed in the upcoming proceedings in which Heartland seeks damages and declaratory relief.

The District Court next considered "the probability that [Heartland] will succeed on the merits." Id. The court determined that the constitutional claims raised by Heartland—unreasonable seizures and numerous failures of due process—were sufficiently supported by the facts of the case and the governing law as to demonstrate a likelihood of success on the merits. We think this is a close call, but at this stage of the litigation, Heartland is not required to prove a mathematical (greater than fifty percent) probability of success on the merits. See id. We cannot say that the court erred in determining that after a trial on the merits, with formal procedures and complete evidence, Heartland has a fair chance of prevailing. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction

is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing . . . .").

The District Court then addressed the third Dataphase factor and balanced the harm to Heartland if its motion for a preliminary injunction failed against the harm to Waddle if the injunction were granted. See 640 F.2d at 113. The District Court believed that the injunction could be sufficiently narrow that it would not interfere with Waddle's ability to carry out his obligations under Missouri law to keep children safe, yet inclusive enough to protect Heartland and its residential students from the harms that would result from the trauma of another mass round-up. Having carefully examined the injunction, we conclude that it successfully protects Heartland from the harms alleged without impeding Waddle's ability to do his job.

The fourth factor is the public interest. Id. As the District Court pointed out, Waddle has a significant public interest in protecting Missouri's children. On the other hand, the court recognized the good work Heartland was doing with children who might otherwise "fall through the cracks." Recognizing that the same public policy was being served by both sides to the dispute and explaining that the real concern was "the method and scope of the removal on October 30, 2001," it was the court's intention, as we have said, to fashion an injunction that would allow Heartland to continue its work yet not interfere with Waddle's performance of his duties. Memorandum & Order at 83. We cannot say that the court erred in its consideration of the public-interest factor.

After applying the Dataphase factors to the facts of this case, the District Court balanced the equities and determined that a carefully crafted injunction should issue. In his argument on appeal, Waddle greatly exaggerates the scope of the injunction and speculates as to the effects of the injunction on the work of state juvenile authorities. A careful reading of the injunction makes it clear that juvenile officers

are not "shackled" in their ability to do their jobs while nevertheless subject to private lawsuits for inaction, nor are they required to "wait on the sidelines, hoping that the problem goes away." Br. of Appellant at 55, 56. Indeed, the court in its order encouraged Waddle and his colleagues to continue to investigate allegations of child abuse or mistreatment at the Heartland facilities, and we wholeheartedly endorse that recommendation. After our review, we conclude that the court did not abuse its discretion in balancing the equities, either by determining that injunctive relief was warranted or in drafting the injunction.

Waddle's remaining claims—that the District Court based its decision on clearly erroneous factual findings and that the injunction violated both the Eleventh Amendment and the clean-hands doctrine—are without merit.

For its cross appeal, Heartland raises two challenges to the scope of the injunction, neither of which has merit. Heartland takes issue with the court's failure to articulate a constitutional standard "for those emergency circumstances under which pre-hearing removals would be justified," Br. of Appellees at 66, and complains that the injunction "does not address seizures of individual students or groups of students not comprising the whole population," id. at 68.

As we have said, the District Court's order and injunction address the concerns raised by the "pre-hearing removal of all boarding children." Memorandum & Order at 89. Heartland now asks the court, in effect, to offer an advisory opinion on what fact scenario might "serve as the basis" for pre-hearing removal. Id. The District Court opted not to speculate on what might or might not pass constitutional muster, and appropriately so. The issue in this case, and that which the court was trying to address, was the indiscriminate removal of boarding students en masse—some without even an ex parte order. The District Court demonstrated appropriate restraint in drafting the order, being as it is a preliminary injunction "to preserve the relative positions of the parties until a trial on the merits can be held." Camenisch, 451 U.S.

at 395. The injunction adequately addresses the concerns raised by the incident that precipitated Heartland's November 5, 2001, motion, and we see no reason to tamper with it. A preliminary injunction is not the proper vehicle for addressing all of the concerns Heartland has raised in its lawsuit, which remain to be decided in the District Court in the upcoming proceedings.

The District Court's order granting Heartland preliminary injunctive relief is affirmed. Waddle's motion to file a supplemental appendix is granted.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.