# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2474

_____

Heartland Academy Community     *
Church, a Missouri Not-for-Profit     *
Corporation; CNS International     *
Ministries, Inc., a Missouri Not-for-     *
Profit Corporation; Tracy Leftwich;     *
David Christensen; Becky Christensen;   *
Paula McKinney; Del McKinney;     *
Jennifer Armstead; Peggy White;     *
Sam Perumalla; Sheela Perumalla;     *
Jim Brownfield; Cheryl Crary; Jim     *
Crary; David Lawson; Marilyn Lawson;  *
Susan McCloy; John McCloy; Denver    *
Barry Selser; Ross Dale; Tina Dale;    *
Shawn Jarnigan; Amy Jarnigan; Brad    *
Hampton; Martha Hampton,     *
    *
    * Appeal from the United States
    Plaintiffs - Appellees,   * District Court for the
    * Eastern District of Missouri.
    v.     *
    *
Michael Waddle, in his individual and   *
official capacities,     *
    *
    Defendant - Appellant,   *
    *
David Parrish, in his individual and   *
official capacities; Patricia McAfee, in  *
her individual and official capacities;  *
Lewis County, Missouri; Missouri    *
Department of Social Services; Cindy   *

Kennel Ayers, in her individual and          *
official capacities,                         *
                                             *
          Defendants.                        *
                        _____

                Submitted:  March 16, 2005
                    Filed:  October 14, 2005
                        _____

Before ARNOLD, BOWMAN, and RILEY, Circuit Judges.
                        _____

BOWMAN, Circuit Judge.

        Michael Waddle appeals from the judgment of the District Court[1] granting injunctive and declaratory relief to Heartland Academy Community Church and CNS International Ministries, Inc. (collectively, Heartland).  We affirm.


                                 I.


        The facts leading up to this lawsuit are set forth in great detail in the District Court's Memorandum and Order, Heartland Academy Community Church v. Waddle, 317 F. Supp. 2d 984, 992–1085 (E.D. Mo. 2004).  Briefly, in October 2001, Waddle, as Chief Juvenile Officer for the Second Circuit of Missouri, effected the removal of 115 boarding students from Heartland Christian Academy (HCA), an educational facility owned and operated by Heartland.  Although Waddle had obtained ex parte probable-cause state-court orders to remove some of the boarding students (and also to remove some students who were no longer at HCA and others who were not even within the jurisdiction of juvenile authorities because of their ages), there were no

_____

        [1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

orders of any kind to remove many of the students who were taken from the school that day. The removal action was without notice to Heartland, the students, or their parents and was taken because of several allegations of mistreatment and abuse of students at HCA.

Soon after the removal, Heartland sought and received a temporary restraining order (TRO) in the District Court. After a hearing, the District Court entered a final preliminary injunction enjoining Waddle and others from "seeking or participating in any pre-hearing removal of all boarding children from HCA unless all boarding children at HCA are directly involved in the underlying facts that serve as the basis for such removal." Heartland Acad. Cmty. Church v. Waddle, 335 F.3d 684, 688 (8th Cir. 2003) (Heartland I) (quoting the District Court's order). On appeal, we affirmed. Id. at 691.

In its third amended complaint, Heartland sought declaratory and injunctive relief against Waddle and others under 42 U.S.C. § 1983 for alleged violations of the First, Fourth, and Fourteenth Amendments. The District Court held a full trial on the merits of Heartland's claims. The court found that "Mr. Waddle appears ready and willing to once again remove the children from Heartland, if the circumstances were the same as they were at the time of the mass removal on October 30, 2001." Heartland Acad., 317 F. Supp. 2d at 1109. Because the court determined that Waddle's actions in October violated the constitutional rights of Heartland and its students, the court granted Heartland a permanent injunction and declaratory relief. The injunction, in its entirety, reads:

> Hereafter, Mike Waddle, or any juvenile officer acting at his direction, shall not cause or attempt to cause the pre-notice or pre-hearing removal of or take into protective custody any child or children from Heartland Academy or CNS International Industries, Inc., without reasonable cause to believe that each child for whom protective custody or removal is sought is in imminent danger of suffering serious physical harm,

-3-

threat to life from abuse or neglect, or has been sexually abused or is in imminent danger of sexual abuse.

Id. at 1110.

Waddle appeals. We review the District Court's findings of fact for clear error and its conclusions of law de novo. To the extent that the issues raise mixed questions of fact and law, we review de novo.

II.

Initially, Waddle makes a series of arguments challenging the jurisdiction of the federal courts and contending that he has immunity from suit.

A.

In the first appeal of this case, we rejected the challenge Waddle made to jurisdiction under the Rooker-Feldman doctrine,[2] which prohibits federal-court review of a state-court judgment. We held that the injunctive relief Heartland was seeking would "not interfere with a state-court judgment" and so "the District Court did not need to take on any issue actually litigated in the state courts or any claim 'inextricably intertwined' with such an issue" in deciding whether to grant the requested relief. Heartland I, 335 F.3d at 689. That remained true at the subsequent trial on Heartland's request for permanent prospective injunctive relief. In this appeal, Waddle acknowledges our holding but suggests that this Court "retract its statement." Brief of Appellant at 34. Nothing has occurred since the first appeal that

---

[2]See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923).

would compel us to do so. We therefore reiterate our holding that the Rooker-Feldman doctrine has no effect on federal-court jurisdiction in this case.

## B.

Waddle argues that the District Court "should also have refused to hear this case on general principles of comity." Id. at 34. He claims that the injunction interferes with his authority "and thus with the authority given to the juvenile court." Id. at 36. Waddle then proceeds to make an abstention argument. (Neither comity nor abstention is discussed anywhere in the District Court's Memorandum and Order).

The comity doctrine "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Rhines v. Weber, 125 S. Ct. 1528, 1533 (2005) (citations to quoted cases omitted). Here, no one has sought to invoke the jurisdiction of the state court to address the federal constitutional questions presented. Heartland does not challenge any state laws or rules, state-court judgments or orders, or anything else that a state court should address in the first instance, so there are no issues of comity in this case. And as we said in our first opinion, to the extent Waddle seeks federal-court abstention on some other ground, we see no abuse of discretion. Heartland I, 335 F.3d at 688 n.4; see Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 236 (1984) (standard of review).

## C.

Waddle also seeks Eleventh Amendment sovereign immunity as a state official sued in his official capacity, citing Ex Parte Young, 209 U.S. 123, 155–56, 159 (1908). But the Ex Parte Young doctrine describes an exception to Eleventh

Amendment immunity for a state official where the relief sought is prospective and not compensatory. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102-03 (1984). A federal court may therefore issue an injunction to prevent state officials from violating the Constitution without running afoul of the Eleventh Amendment. Green v. Mansour, 474 U.S. 64, 68 (1985); see also R.W.T. v. Dalton, 712 F.2d 1225, 1233 (8th Cir.) ("Although the juvenile officer may have limited immunity from liability for damages, there is no reason to extend that immunity to liability for equitable relief." (citation omitted)), cert. denied, 464 U.S. 1009 (1983). "An injunction to prevent [a state officer] from doing that which he has no legal right to do is not an interference with the discretion of an officer." Ex Parte Young, 209 U.S. at 159. We agree with the District Court and hold, as we did summarily in our prior opinion, Heartland I, 335 F.3d at 691, that Eleventh Amendment sovereign immunity is not a bar to suit in this case.

D.

In another claim not addressed by the District Court, Waddle contends that he is entitled to absolute immunity from civil suit because he is a child services worker. In support of this proposition, he cites a case from the Ninth Circuit where the court compared social workers with criminal prosecutors and held that "social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 763 (9th Cir. 1987) (quoting Meyers v. Contra Costa County Dep't of Soc. Servs., 812 F.2d 1154, 1157 (9th Cir.), cert. denied, 484 U.S. 829 (1987)). We are not certain that the immunity afforded prosecutors for their work in bringing criminals to justice should be available to juvenile officers in civil removal proceedings that are unrelated to detaining juveniles for reasons of delinquency or their caretakers on criminal charges related to the care of the juveniles. But we do not reach that issue because Heartland is not challenging Waddle's commencement of court proceedings per se. Heartland's complaints are

with the ex parte nature of the proceedings and the information presented to the state court to justify the removal orders (and, of course, a number of children were removed without benefit of even an ex parte order). Cf. Whisman v. Rinehart, 119 F.3d 1303, 1308 (8th Cir. 1997) (holding that absolute prosecutorial immunity was not available to state juvenile officers who failed to investigate neglect allegations, detained the allegedly abused child, and delayed in filing post-seizure state-court proceedings). In any event, we conclude that the Ninth Circuit's opinion is inapposite here. In Coverdell, the prosecutorial-immunity defense was raised in response to the plaintiff's claim for damages, not in defense of the request for an injunction. The dismissal of the plaintiff's claim for injunctive relief was affirmed because it was found to be moot, not because the state actors were entitled to prosecutorial immunity. Here, Heartland is not seeking damages from Waddle nor to punish him for his past judgment in effecting the mass removal of students from HCA without notice or hearing. Instead, Heartland has sought and received only declaratory and prospective injunctive relief prohibiting Waddle, as juvenile officer, from acting in violation of the Constitution when and if he removes (or directs the removal of) children from Heartland facilities in the future. See Supreme Ct. of Va. v. Consumers Union of the United States, Inc., 446 U.S. 719, 736 (1980) (noting that prosecutors, as state enforcement officers, are "natural targets for § 1983 injunctive suits"). Waddle is not entitled to the absolute immunity he seeks.

E.

Waddle further maintains that the District Court had no power to issue an injunction against him under § 1983 because he is a "judicial officer." That Waddle, as a juvenile officer, was appointed by, and may at times work at the behest of, the state circuit court does not mean he is entitled to judicial immunity from suit in this case. We do not decide whether Waddle may be entitled to judicial immunity for enforcing a valid court order. Cf. id. (determining that a state supreme court and its chief justice were acting "in their enforcement capacities" when initiating proceedings

against attorneys pursuant to court rules and so were not entitled to judicial immunity). Heartland is challenging the manner in which Waddle obtained the orders (and therefore the validity of those orders) and his failure in some cases to obtain court orders of any kind. Waddle was certainly not acting as the functional equivalent of a judge *qua* judge (not enforcer) when he used bad information to obtain ex parte orders and then removed all boarding children from HCA, including those for whom he had no court orders. See Whisman, 119 F.3d at 1309. We affirm the District Court's denial of judicial immunity.

## III.

Waddle next asserts that the District Court erred in concluding that Waddle violated Heartland's constitutional rights. Without question, some of Heartland's constitutional claims are stronger than others, but any single violation of Heartland's federal constitutional rights in this case would be sufficient to sustain Heartland's claim for injunctive relief under § 1983. Heartland alleged violation of four constitutional rights.

## A.

Before considering the merits of Heartland's claimed Fourth Amendment violation, the District Court reiterated its earlier ruling (which we did not address in the first appeal) that Heartland had "organizational standing" to bring such a claim. Heartland Acad., 317 F. Supp. 2d at 1088. Waddle argues that the court was wrong and that Heartland cannot assert a claim for the alleged violation of its students' Fourth Amendment rights.

Waddle cites two cases in his briefs for the proposition that associational or organizational standing is not available to Heartland. In the Eighth Circuit case Waddle cites, we reiterated our earlier decision in the same criminal case that a search

by law enforcement officers was constitutional and that the cocaine evidence seized would not be suppressed. United States v. Washington, 197 F.3d 1214, 1216 (8th Cir. 1999) (citing the law of the case doctrine), cert. denied, 531 U.S. 1015 (2000). As an alternate holding, the Court noted that the defendant had no standing to challenge the search in any event because he had disclaimed ownership of the bag in question, and we did say, "Fourth Amendment rights are personal [and] . . . may not be vicariously asserted." Id. (quoting Alderman v. United States, 394 U.S. 165, 174 (1969)) (alteration in Washington). That statement in the context of a case considering the applicability of the exclusionary rule, a remedy used for Fourth Amendment violations in criminal cases but not in civil cases, is not controlling in this § 1983 case. The Supreme Court has never held (and neither have we) that associational standing is not available to § 1983 plaintiffs alleging Fourth Amendment violations. Cf. United States v. Salvucci, 448 U.S. 83, 87 n.4 (1980) (noting that the Court in 1978 had "discarded reliance on concepts of 'standing' in determining whether a defendant is entitled to claim the protections of the exclusionary rule").

As Waddle points out in his reply brief, the Ninth Circuit in Mabe v. San Bernadino County, Department of Public Social Services noted in a § 1983 case that a mother had no standing to claim damages for a violation of her child's Fourth Amendment rights when the child was removed from the mother's home. 237 F.3d 1101, 1111 (9th Cir. 2001). But the Mabe court cited a criminal exclusionary-rule opinion for support of its statement. For the reasons just stated, we do not find that court's decision persuasive here.

We conclude that associational standing is legally available to Heartland on its Fourth Amendment claim, but we still must determine if the facts of this case qualify Heartland to assert the Fourth Amendment rights of its students. To do so, we apply a three-part test to those facts. See Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

First, it is clear that the individuals in question, the removed children, "have standing to sue in their own right." Id. Next, "the interests [Heartland] seeks to protect are germane to the organization's purpose." Id. Indeed, the school's very survival could depend upon its success in getting the injunction it seeks. As we noted in Heartland I, "On the face of the complaint, the corporate plaintiffs alleged injury to themselves (the imminent shutdown of HCA) as a result of Waddle's conduct." 335 F.3d at 689. Additional mass roundups of students such as the one that took place in October 2001 could well result in a significant loss of students. Without students, there is no school. This Court is satisfied that Heartland has "a stake in the resolution of the dispute, and thus [is] in a position to serve as [Waddle's] natural adversary." United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 555–56 (1996). Finally, because Heartland seeks only declaratory and prospective injunctive relief, the participation of individual students who were affected by the mass removal of students in 2001 is not required. "[N]either the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 343. To the extent the District Court's decision to grant associational standing depends upon findings of disputed fact, we see no clear error. And we conclude that Heartland has demonstrated that it has associational standing to assert the Fourth Amendment claims of its students.

We turn now to the merits of the Fourth Amendment claim against Waddle. As for the students seized with ex parte court orders, the District Court found that those orders were obtained by Waddle and at his request with stale information, misinformation, and material omissions, provided (or omitted) by Waddle. Because of the manner in which the removal orders were obtained, the court held that the seizures were unreasonable and that Waddle violated the Fourth Amendment in removing the children referenced in the orders. As for the children taken without even ex parte court orders, the court held that those seizures were not reasonable because there was neither probable cause nor exigent circumstances to justify the taking of thirty-five children without court orders. Upon review of the record in this

-10-

case, we conclude that the court's factual findings regarding the process employed by Waddle in obtaining the ex parte orders are not clearly erroneous.  Likewise, upon de novo review, we see no error in the legal conclusions on the reasonableness of the seizures and the Fourth Amendment violation.

B.

Waddle next challenges the District Court's conclusion that he violated Heartland's substantive due process right to family integrity under the Fourteenth Amendment.  Again, Waddle questions whether Heartland has standing to bring this claim in its name.

"We have recognized a right to familial relations, which includes the liberty interest of parents in the custody, care, and management of their children."  King v. Olmsted County, 117 F.3d 1065, 1067 (8th Cir. 1997).  And the Supreme Court held in Pierce v. Society of Sisters that a private school could assert such a claim on its own behalf.  268 U.S. 510 (1925).  The private school plaintiffs in that case challenged a state law that compelled the attendance of nearly all the state's children at public schools.  The Court noted that the plaintiffs had "business and property for which they claim protection," id. at 535, as is true for Heartland.  And as with the private schools in Pierce, Heartland's "interest is clear and immediate," and "the injunctions here sought are not against the exercise of any *proper* power" by the state.  Id. at 536.  Moreover, in this case, the students in question not only attend classes but also live full time under the care and control of school staff, with the full knowledge and approval of their parents or guardians.  See Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality opinion) (reiterating the liberty interest of parents and guardians "to direct the upbringing and education of children under their control") (quoting Pierce, 268 U.S. at 534–35).

Waddle proposes that the potential loss of students does not have an impact on Heartland (as it did in <u>Pierce</u>) because so many of HCA's students pay little or nothing to attend. The record does show that the school is funded primarily by its owner, so the impact of departing students may make little difference to the financial health of the school. But that fact is of little consequence to our decision here. A school, by definition, ceases to exist without students, regardless of how flush it may be financially. We hold that Heartland has standing to bring this claim.

As for the merits, Waddle clearly interfered with Heartland's right to family integrity when he removed all of the boarding students from HCA in October 2001. But the right to family integrity cannot be absolute when the state has a compelling interest in protecting children from abuse. <u>See</u> <u>Swipies v. Kofka</u>, 348 F.3d 701, 703 (8th Cir. 2003) (noting the state's compelling interest in protecting a child). This Court has determined that qualified immunity may be available for child abuse investigators who are defendants in suits for alleged violation of the right to family integrity "if their actions are properly founded upon a reasonable suspicion of child abuse." <u>Collins v. Bellinghausen</u>, 153 F.3d 591, 596 (8th Cir. 1998). Here, the District Court found that students were removed from HCA when there was no reasonable suspicion of child abuse. This finding is not clearly erroneous. On this record, we cannot say that the court erred in holding that Waddle violated Heartland's right to family integrity.

## C.

Waddle maintains in his briefs that Heartland alleged only substantive and not procedural due process violations under the Fourteenth Amendment. Some of Waddle's confusion on this point likely comes from the District Court's opinion, which discusses both substantive and procedural due process violations as a single topic so that the two distinct rights are sometimes blurred. We nevertheless think that a procedural due process claim was adequately raised. Some of Heartland's

-12-

allegations of due process violations are plainly couched in the language of procedural due process jurisprudence. See, e.g., Third Amended Complaint para. 34 ("Defendants have violated and continue to violate the federal constitutional rights of individuals in the Heartland community, including but not limited to its students, . . . not to be deprived of their liberty without due process of law . . . ."); id. para. 63(b) (requesting injunctive relief prohibiting pre-notice or pre-hearing removal of any children from Heartland in the absence of exigency). We hold that the language in the complaint, together with the actions that provided the impetus for this lawsuit—the mass removal of boarding students **without notice and hearing** in the absence of exigency—were sufficient to put Waddle on notice that Heartland's Fourteenth Amendment claim included a claim for violation of Heartland's procedural due process rights.

As to the merits of the issue, the District Court noted that Waddle did not have the requisite reasonable suspicion of abuse or imminent abuse to circumvent the Fourteenth Amendment requirements of notice and an opportunity to be heard before he seized the students. Heartland Acad., 317 F. Supp. 2d at 1101 ("Mr. Waddle effectively prevented [Heartland] from ever receiving any due process related to the removal of the children before and after their removal."). Again, we see no clear error in the court's findings of fact, and we hold that the court did not err in declaring that Waddle violated Heartland's procedural due process rights when it removed the children from HCA without notice and opportunity to be heard.

D.

Heartland also claimed a violation of its First Amendment rights of association as a result of the mass removal of its boarding students. As with other constitutional rights, the right to expressive association is not absolute and can be abridged in the face of "compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms."

-13-

Roberts v. United States Jaycees, 468 U.S. 609, 623 (1984). We do not quarrel with Waddle's assertion that "[t]he State has a compelling interest in protecting children." Brief of Appellant at 52. We take issue, however, with Waddle's characterization of Heartland's associational rights as "the interests of an allegedly an [sic] abusive organization to associate with its victims." Reply Brief of Appellant at 20.

The problem here is that Waddle effected the wholesale removal of HCA's boarding students with ex parte orders or no orders at all in the absence of exigent circumstances. The state interest in protecting children from abuse could have been "achieved through means significantly less restrictive of associational freedoms." That is, Waddle should have given notice to Heartland and scheduled a hearing in which Heartland could have tested and rebutted Waddle's evidence that purportedly demonstrated that mass removal was required under state law. We see no error in the District Court's holding that Waddle violated Heartland's First Amendment associational rights.

IV.

We turn now to Waddle's claim that "[t]he district court lacked authority to grant the specific relief contained in the judgment." Brief of Appellant at 55. Under this heading, he challenges the injunction itself as legally flawed.

A.

Waddle contends that this injunction has effectively—and impermissibly—rewritten state law or has "left state law intact but carved out a portion of the juvenile officer's authority where a federal judge will be the gatekeeper to the state judiciary." Id. at 56. He declares that he is "barred from acting to protect children." Id. at 57. According to Waddle, state law is broader than the injunction and requires him to remove children from Heartland facilities in circumstances (he

gives the examples of "imminent" emotional abuse or threatened harm that is not "serious") where such a removal would result in a violation of the federal-court injunction. But if Waddle was in fact applying state law when he removed all boarding children from HCA—an issue that was neither raised nor decided in the District Court—then state law would be *ipso facto* unconstitutional, at least as applied by Waddle to Heartland in October 2001. The federal-court injunction instructs Waddle on how to avoid violating the federal constitutional rights of Heartland and its students as he goes about doing his job in accordance with state law. We frankly see no reason why Waddle cannot perform the job required of him by state law without violating the United States Constitution. He is merely to conform his conduct to established federal constitutional law as determined by the United States Supreme Court. The injunction does not, as Waddle intimates, strip him of his ability to make judgment calls to protect the welfare of the children at Heartland. But he must exercise that judgment so as to protect the constitutional rights of Heartland and its students.

## B.

Waddle also says that the injunction is so vague that he is unable to fathom what the court expects of him (although he did not raise this dilemma with the District Court to give that court an opportunity to clarify the injunction for him). For example, he purports to be confused about what sort of notice he is to give and to whom, and how extensive the required hearings must be. He apparently does not know "whether 'Heartland Academy' refers to Heartland Christian Academy" and is baffled by "what it means to remove children 'from' [the named] entities." Id. at 59, 60.

With these arguments, it seems Waddle purposely misapprehends the District Court's injunction, notwithstanding his intimate familiarity with this case and the guidance set forth in the District Court's voluminous Memorandum and Order.

-15-

Reading the injunction in the context of the facts and circumstances of this case, we find Waddle's claims to be preposterous. We conclude that anyone acquainted with this case knows precisely the behavior that the injunction is designed to prevent in the future—the behavior that violated the constitutional rights of Heartland and its students in the first place. We will chalk this one up to an attempt at zealous advocacy on the part of counsel and not to a fundamental inability to read and comprehend.

## C.

Waddle also asserts, for the first time, that the injunction violates the Establishment Clause of the First Amendment because it fashions special rules that treat the faith-based Heartland "better" than other such facilities in Missouri. Id. at 61. According to Waddle, Heartland has "pro-caretaker rules" and everyone else has "pro-child rules." Id. at 62. But the injunction was not entered because Heartland operates a faith-based school. The injunction was sought and entered because Waddle violated the constitutional rights of Heartland and its students. The Establishment Clause is not implicated by the facts of this case.

## V.

Finally, a word about what the District Court's injunction does **not** do. Throughout his briefs, Waddle continually suggests that the injunction effects a change in state law as to the removal of children from abusive situations and that he will be so intimidated by the requirements of the federal-court injunction that he will be unwilling or unable to do his job. As we have said, we do not see why that should be so. The injunction is specific to Waddle (and to those acting at his direction) and to Heartland only. It is the result of ongoing problems between Waddle and Heartland, not the least of which were a breakdown in communication and a mutual lack of trust, that culminated with a failure of judgment when Waddle removed all

-16-

boarding students from HCA without notice or opportunity to be heard, using stale or inaccurate information, and without exigent circumstances. As we see it, Waddle will still have the ability—and the obligation—to protect the children at Heartland from harm. But he may not do so by treading on federal constitutional rights.

The judgment of the District Court is affirmed.

_____